

**SO ORDERED.**

**SIGNED this 19 day of September, 2011.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| **TONY LEE JENKINS** | **10-05912-8-SWH** |
| DEBTOR | |
| **TONY LEE JENKINS** | ADVERSARY PROCEEDING NO. |
| Plaintiff | **11-00080-8-SWH-AP** |
| v. | |
| **GENESIS FINANCIAL SOLUTIONS and VATIV RECOVERY SOLUTIONS, LLC,** | |
| Defendants. | |

**ORDER ALLOWING MOTION TO DISMISS**

The matter before the court is the motion to dismiss filed by defendants Genesis Financial Solutions and Vativ Recovery Solutions, LLC in response to plaintiff Tony Lee Jenkins' complaint seeking actual and statutory damages based on alleged violations of the federal Fair Debt Collection Practices Act ("FDCPA") and North Carolina's new statutory provisions with respect to debt

collection by debt collection agencies. A hearing was held in Raleigh, North Carolina, on August 11, 2011. For the reasons that follow, the motion will be allowed.

### Background and Legal Standard

For purposes of the motion to dismiss, the defendants adopted the statement of facts set out in the plaintiff's complaint, and the plaintiff adopted the defendants' statement of the bases upon which the court must assess the sufficiency of a complaint. See, e.g., Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007).

The plaintiff and debtor, Tony Lee Jenkins, filed a petition for relief under chapter 13 on July 26, 2010. The plaintiff filed a Schedule F which included "two claims allegedly owed to Discover Financial Services (hereinafter "Discover"), one in the amount of $4,637.47, and the other in the amount of $4,412.84; both such claims were listed by the plaintiff as 'disputed.'" Complaint ¶ 15a. The plaintiff also listed a claim "allegedly owed to Nations Bank in the amount of $6,117.76; such claim was also listed by the plaintiff as 'disputed.'" Id. ¶ 15b.

Defendant Vativ filed a proof of claim on behalf of Genesis Financial Services ("Genesis") in the amount of $13,554.02, based on "'unsecured merchandise and/or cash advances' purportedly made by the plaintiff." Id. at ¶ 16a. Genesis is a debt buyer based in Beaverton, Oregon, and registered to do business in North Carolina. Vativ is a debt collector based in Sugar Land, Texas, and provides "bankruptcy management" services to debt owners, including Genesis. Vativ indicated on the proof of claim that the debtor may have "scheduled [the] account as: DISCOVER CARD," that the present owner of the debt was Genesis, and that the claim was filed by Vativ "as agent for" Genesis. Id. at ¶ 16b. Vativ stated that the "Original Balance, Plan Balance and Current Balance were all $13,554.02." Id. at ¶ 16c.

Vativ filed a second proof of claim on behalf of Genesis with respect to the Nations Bank claim listed by plaintiff, in which Vativ identified Genesis as the present owner of the debt to Nations Bank and stated that it was filing the claim as agent for Genesis. Vativ stated that the "Original Balance, Plan Balance and Current Balance were all $18,716.66." Id. at ¶ 17c. The plaintiff asserts that Genesis acquired the claims after the underlying accounts were in default.

On October 11, 2010, the trustee filed an objection to confirmation and motion to dismiss based on the debtor's failure to make plan payments and to provide proof of filing of required tax returns, but withdrew the motion by notice dated November 3, 2010. The trustee filed a second objection to confirmation and motion to dismiss on February 11, 2011, stating that the debtor had failed to file a confirmable plan. On February 22, 2011, the debtor filed objections to both of the Genesis claims, alleging as to both that Genesis had failed to attach sufficient documentation as required by Rule 3001 of the Federal Rules of Bankruptcy Procedure and, separately, that collection of the claim was barred under North Carolina state law. The debtor argued that the claims were outside the statute of limitations and, further, that operation of new state statutes applicable to debt collection agencies both 1) preclude collection of a claim outside the statute of limitations and 2) require documentation of debt ownership and verification of the amount owed. Also on February 22, the debtor filed objections to two other, similar claims asserted by RJM Acquisitions Funding LLC, a different debt buyer. Orders allowing the objections to the the RJM claims, and disallowing the claims, were entered on March 20, 2011.

The court did not decide the objections to the Genesis claims because they were promptly withdrawn by Vativ on March 2, 2011. In each notice of withdrawal, Vativ stated that it was "permanently withdrawing" the claim on grounds that it was "wrongly filed." Despite Vativ's

withdrawal of the claims, the debtor proceeded to file the instant adversary proceeding on March 4, 2011, asserting as counts in the complaint the same bases that previously were asserted in the objections to the claims. On March 28, 2011, the trustee withdrew his objection to confirmation and motion to dismiss.

## Discussion

The first count alleges violations of the Fair Debt Collection Practices Act ("FDCPA"). According to plaintiff, the defendants violated the FDCPA by filing proofs of claim that are "based on time-barred debts" and are not supported by sufficient documentation. In the second count, plaintiff contends that the act of filing these proofs of claim constitutes collection activity in violation of new North Carolina statutes applicable specifically, and only, to debt buyers and collection agencies. The operation of the new statutes is the catalyst for plaintiff's complaint and provides the underpinning for plaintiff's FDCPA claim. Plaintiff emphasized the significance of the new statutes during the hearing and acknowledged that but for their enactment, this adversary proceeding probably would not have been filed. Because under the new law the defendants have no legal right to collect payment, plaintiff argues, they also have no legal basis on which to assert a claim, such that their filed proofs of claim constitute unfair collection activity of the kind precluded by the North Carolina General Statutes and the FDCPA.

The legal questions raised by the plaintiff are intriguing. The court notes at the outset, though, that the facts of this case as alleged provide only a skeletal framework for the analysis the plaintiff asks this court to undertake. The plaintiff's complaint alleges in cursory fashion that the claims are precluded by applicable statutes of limitations and that the defendants should have known the claims were time-barred. The plaintiff simply states the following:

4

>  Upon information and belief, the collection of the claims asserted by defendants in the plaintiff's underlying Chapter 13 case, and on its Proofs of Claim numbers 5 and 6, is, in fact, barred by the statute of limitations under applicable North Carolina law.

Complaint ¶ 21. The complaint does not cite or otherwise identify the applicable statute of limitation, and does not state the date on which the debtor contends such statute began to run, or expired.[1] It also does not specify the nature or amount of the actual damages allegedly incurred by plaintiff, though counsel indicated at the hearing that the damages consist of legal fees incurred when defendants' claims prompted the trustee to object to confirmation. The court makes these observations in order to illustrate that while the plaintiff asserts creative and far-reaching legal arguments, they are premised upon a common and utterly unremarkable set of facts pertaining to old credit card debt.[2] As will be discussed below, this is a fact set the Bankruptcy Code is capable of addressing.

Plaintiff contends that this case is unusual in that it is a "filing a proof of claim for a time-barred debt PLUS" case. In other words, the filing of these proofs of claim by these defendants was unlawful from the start and, plaintiff contends, defendants' status as collection agencies, *coupled*

---

[1] Although not pled or argued by the defendants, the court could, but chooses not to, dismiss the complaint under a Twombly analysis.

[2] Bankruptcy courts see this scenario all the time. The plague of stale claims emanating from debt buyers recently prompted a flurry of discussion about and, ultimately, revision to Rule 3001 of the Federal Rules of Bankruptcy Procedure, which sets forth the requirements applicable to the proper filing of a claim based on a writing. The amendments, which take effect December 1 of this year, add additional requirements in an individual debtor case and specify the sanctions that may ensue for failure to comply. See Fed. R. Bankr. P. 3001(c)(2) (effective December 1, 2011); see also In re Andrews, 394 B.R. 384, 389 (Bankr. E.D.N.C. 2008) (discussing the need for revisions to the rule in the context of claims filed by bulk claim buyers and referring the issue to the Advisory Committee on Bankruptcy Rules); see also In re S&A Dennis Enters., Inc., 2011 WL 1457204 at *8-9 (Bankr. W.D.N.C. 2011) (discussing the many divergent views of precisely what documentation must accompany a claim for a credit card debt and declining to establish precedent as to what is required, in part because of pending amendments to Rule 3001).

5

with the assumed fact that they knew or should have known the debt was time-barred, precluded them from even attempting to collect the debt through a suit, arbitration, "or otherwise." The filing of a proof of claim in this bankruptcy case was, under *these* circumstances, an unlawful attempt to collect a debt under the laws of the State of North Carolina and the FDCPA. Because plaintiff has made clear that his entire FDCPA argument is premised upon the state law argument, the court addresses that issue first. It proves to be dispositive.

Plaintiff asserts that defendants' filing of proofs of claim in the plaintiff's bankruptcy case is, by virtue of defendants' status as debt buyers and the claims' status as time-barred, an "attempt to collect any debt by the use of any unfair practices" within the meaning of North Carolina General Statute § 58-70-115. That statute sets out a non-exclusive list of unfair collection practices, two of which plaintiff claims were violated by the defendants:

> (4) When the collection agency is a debt buyer or is acting on behalf of a debt buyer, bringing suit or initiating an arbitration proceeding against the debtor or otherwise attempting to collect on a debt when the agency knows, or reasonably should know, that such collection is barred by the applicable statute of limitations.
>
> (5) When the collection agency is a debt buyer or acting on behalf of a debt buyer, bringing suit or initiating an arbitration proceeding against the debtor, or otherwise attempting to collect on the debt without (i) valid documentation that the debt buyer is the owner of the specific debt instrument or account at issue and (ii) reasonable verification of the amount of the debt allegedly owed by the debtor.

N.C. Gen. Stat. § 58-70-115. Plaintiff also asserts that the proofs of claim constitute an "attempt to collect a debt . . . by any fraudulent, deceptive or misleading representation" within the meaning of North Carolina General Statute § 58-70-110(4), which precludes a collection agency from "falsely representing the character, extent, or amount of a debt against a consumer."

The court is simply not persuaded that a creditor's filing of a proof of claim in a bankruptcy case constitutes an effort to "collect" within the meaning of North Carolina's new statutes. Plaintiff

offers no authority to establish that filing a proof of claim in a bankruptcy proceeding can constitute an effort to collect a debt in the relevant context, and instead states only that "while it is debatable whether or not the filing of the proofs of claim by the Defendants in this case were attempts to collect debts *in violation of the FDCPA and/or applicable North Carolina law* (based on the status and types of claims asserted), it is inarguable that the filing of such proofs of claims was an attempt to collect a debt." Plaintiff's Mem. At 6-7.

The FDCPA seeks to curtail abusive collection practices, as articulated in the Congressional findings and declaration of purpose: "There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). The North Carolina statutes also forbid "fraudulent, deceptive or misleading representation" or "unfair practices" in the course of collecting a debt, and lists certain activities – all of them patently obvious – that a debt collector may not undertake, such as communicating with a consumer in a name other than his own, or using written communications that purport to be issued by a court or other authority. See, e.g., N.C. Gen. Stat. § 58-70-115. The debt collection activities the State of North Carolina seeks to curtail have virtually nothing in common with the filing of a proof of claim in bankruptcy court. The purpose of the state statute is, the court believes, similar to the goals of the FDCPA, and those goals are not advanced by plaintiff's action. As the court in B-Real, LLC v. Rogers explained, in the context of similar facts:

> [T]he purpose of the FDCPA itself is not furthered by its application in this instance. 'Debtors in bankruptcy proceedings do not need protection from abusive collection methods that are covered under the FDCPA because the claims process is highly regulated and court controlled.' (citation omitted). While the FDCPA's purpose is

> to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a debtor is instead protected by the court system and its officers. See e.g. Argentieri v. Fisher Landscapes, Inc., 15 F. Supp. 2d 55, 61-62 (D. Mass. 1988), in which the court explained: 'The whole purpose of regulating debt collection was to 'supervise' a range of unsupervised contacts, such as demand letters and late-night telephone calls. In contrast, a statement in a pleading is supervised by the court and monitored by counsel. The two situations are drastically different.'

B-Real, LLC v. Rogers, 405 B.R. 428, 432 (M.D. La. 2009) (citation omitted). The court is not persuaded that filing a proof of claim can constitute regulated "collection" activity within the meaning of any of the statutory provisions at issue in this matter.

Accepting plaintiff's construction also would run contrary to well-established meaning within the Bankruptcy Code itself. If filing a proof of claim constituted a "collection" activity, then filing proofs of claim under § 502(b) would be fundamentally at odds with language in § 362(a)(6) providing that the filing of a petition "operates as a stay, applicable to all entities, of . . . any act to *collect*, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." Admittedly, the Bankruptcy Code has its share of internal inconsistencies, but these particular provisions are not at odds in that way.

Because both Count 1 and Count 2 of the complaint are founded upon the court finding, as a starting point, that the filing of a proof of claim constitutes a collection activity in violation of North Carolina General Statutes 58-70-110(4) or 58-70-115(4) and (5), the court need not, and does not, go further.[3]

---

[3] The court notes as an aside that there is strong and ample authority for the proposition that a creditor's filing of a claim in a bankruptcy proceeding, even if the claim is prescribed by applicable state law, is not an unlawful debt collection practice actionable under the FDCPA. See, e.g., Simmons v. Roundup Funding, LLC, 622 F.3d 93, 95-96 (2nd Cir. 2010); B-Real, LLC v. Chaussee (In re Chaussee), 399 B.R. 225, 227 (9th Cir. BAP 2008) (construing Walls v. Wells Fargo Bank, N.A., 276 F. 3d 502 (9th Cir. 2002)), B-Real, LLC v. Rogers, 405 B.R. 428 (M.D. La. 2009);

The court is sympathetic to debtors who, when careless debt buyers or collection agencies file claims that are stale, inadequately reviewed, or otherwise flawed, find themselves in the position of having to take the avoidable step of objecting to a claim that should not have been filed in the first place. The issue is a real one, the problem is widespread, and it burdens both debtors and the courts. But in "vanilla" cases such as this, i.e. where there are no allegations of a pattern of conduct, an objection to claim is the more efficient and appropriate procedure by which to contest the conduct.

It is ordered that the motion to dismiss is **GRANTED**.

**SO ORDERED.**

**END OF DOCUMENT**

---

see also, e.g., In re Varona, 388 B.R. 705, 719 (Bankr. E.D. Va. 2008) (not addressing the issue directly but citing numerous cases that do). This court, like the Chaussee court, is "convinced that the Code and Rules are up to the task of compensating a debtor for any damages or costs occasioned by, and to punish and deter, those who would abuse the bankruptcy claims process," such that an objection to claim and motion for sanctions, if warranted, will typically be the appropriate measures to take in cases involving stale claims filed by debt buyers. B-Real, LLC v. Chaussee, 399 B.R. at 241.